[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On September 30, 1987, Frank or Mona Russo leased from Danbury Auto Haus, Inc. a new 1987 Mercedes-Benz, Model 420S EL. The term of the lease was for sixty (60) months with a capitalized cost of $49,200. With a capitalized cost reduction of $12,175 paid by the Russos on the signing of the lease, the adjusted capitalized cost of the lease was $37,025. The estimated end of term residual value was $25,696. The total monthly lease payment was $524.31.
Paragraph 6 of the lease provides as follows:
6. VEHICLE WARRANTIES AND DISCLAIMERS
 To the extent they are assignable, you agree to assign to me all your rights and remedies under the manufacturer's standard warranties applicable to the vehicle. I acknowledge that you make no express warranties regarding the vehicle as to its condition, merchantability or fitness for use, that you disclaim any implied warranties, and that I am leasing it from you `as-is'. CT Page 6492
The 1987 Mercedes-Benz Owner's Service and Warranty Policy (plaintiffs' Exhibit A) was, as a part of this transaction, assigned to the Russos.
Paragraph 7 of the lease provides:
7. PURCHASE OPTION
 I understand that I have no option to purchase the vehicle at any time, but that I may have an opportunity to purchase the vehicle `as is' upon the expiration of the lease. If you elect to sell the vehicle to me upon lease expiration, I understand that the purchase price will be an amount equal to the Estimated End of Term Residual Value (Item 2E). In addition, I will pay you any official fees and taxes on my purchase and any other amounts due but not paid at the time of termination. I acknowledge that I will have absolutely no equity or other ownership rights in the vehicle unless and until I have purchased the vehicle.
On May 11, 1989, the plaintiffs brought suit against Danbury Auto Haus, Inc., Mercedes Benz of North America and Mercedes Benz Credit Corporation. The revised complaint of November 8, 1989 follows:
Count one — as to Auto Haus breach of contract.
 Count two — Auto Haus violation of General Statutes, Sec. 42a-2-313.
 Count three — Auto Haus' unfair or deceptive practices in violation of General Statutes, Sec. 42-110b et seq. (CUPTA).
 Count four — Auto Haus-Magnuson-Moss Warranty Act 15 U.S.C. § 2307
et seq.
Count five — Auto Haus implied warranty.
Count six — MBNA — Breach of contract.
 Count seven — MBNA — violation of General Statutes, Sec. 42a-1-313.
Count eight — MBNA — CUPTA violations.
Count nine — MBNA — Magnuson-Moss Warranty Act. CT Page 6493
Count ten — Mercedes-Benz Credit Corporation implied warranty.
 Count eleven — Mercedes-Benz Credit Corporation unjust enrichment.
The plaintiffs claim:
a) damages;
b) a rescission of the parties' agreement;
c) damages pursuant to General Statutes, Sec. 42-179; and,
d) attorney's fees.
MBNA pleaded generally no knowledge concerning the plaintiffs' allegations. MBCC pleaded generally insufficient knowledge as to counts ten and eleven. MBCC filed three special defenses as follows:
First special defense to tenth count — Plaintiffs in writing discharged any implied warranties and agreed they were leasing the car "as is"; (2) first special defense to the eleventh count in the lease agreement — the plaintiffs acknowledged that MBCC made no express warranties as to the car; and (3) second special defense to tenth and eleventh counts. In the lease agreement the plaintiffs agreed to payment waiving any right to setoff, counterclaim, reduction, abatement, suspension, deferment or any other defense for any reason whatsoever, including but not connected to warranty problems.
MBCC also counterclaimed for payments due under the lease.
Of great significance to this case, the plaintiffs on May 11, 1989 applied for an ex parte temporary restraining order, representing that they were about to commence the action against the three defendants and that as a result of a breach of the car agreement by the defendants, they did not intend to make any further payments until the resolution of the dispute was reached. They claimed that in order to prevent the defendants from repossessing the car, they requested the court to temporarily restrain the defendants from taking possession of it.
At the hearing on the plaintiffs' application, the court issued on June 19, 1989 the following unusual order:
 The application for a temporary restraining order having been heard, it is ordered Granted under the following conditions: CT Page 6494
 The plaintiff shall have full use of the vehicle and pay $200.00 per month toward the vehicle. The temporary restraining order will, in effect, reduce the monthly lease amount to $200.00 pending final order of the Court.
 However, in the alternative, the defendant can put up $23,300.00 by certified or bank check, and the plaintiff shall return the car to the defendant by July 3, 1989.
The order contained further provisions not pertinent to the issues in this case, covering certain arrangements that were to be undertaken if the $23,300 were to be put up. This was not done. The amount of $23,300 represents the plaintiffs' capitalized cost reduction payment of $12,175 on signing the lease plus the total of accumulated monthly payments under the lease they made up to the date of hearing.
About four weeks after the Russos took possession of the car, they noticed paint chipping and cracking in the trunk area. Neither Frank nor Mona Russo had noticed this condition when they leased the car. They took the car back to Auto Haus who told them that a Mercedes-Benz man from the manufacturer would take a look at it. Steve Sauer, the customer service representative covering this area, told them that the condition was caused by acid rain which probably happened on the way over from Germany. Sauer said the damage was not covered by MBNA's warranty but that MBNA would repaint the car again perfectly, or words to that effect. Peter Themel, the Auto Haus salesman involved in the Russo deal, also assured the Russos in this regard. It was over six months before this could be done. This attempt to repaint the car took over thirty days and resulted in a less than perfect finish with blotchy spots, sunburst, and dark patches on the car.
Thereafter, Auto Haus and MBNA promised that the car would be stripped and repainted a second time to the Russos' satisfaction. This second repainting, in the fall of 1988, was also unsatisfactory. Sauer then offered to have the car stripped and repainted in MBNA's main facility in Baltimore but the Russos refused.
The court will do its best to clear away excess and redundant issues so that it can get down to the fundamental issues involved. The plaintiffs presented no evidence nor made any convincing arguments that they would prevail on any of the claims except for the violation of an express warranty under General Statutes, Sec. 42a-2-313. Judgment may enter for all defendants on all issues except for this one. Judgment CT Page 6495 is entered for all defendants on the second and seventh counts, specifically because General Statutes, Sec. 42a-2-313, on which those counts rely, concern only sales of automobiles. Further, the first and second special defenses of MBCC are sustained. The court will consider MBCC's second special defense to the tenth and eleventh counts when it reaches the question of damages. It should be noted, concerning the claims of Danbury Auto Haus that, as stated above by paragraph six of the lease, the plaintiffs acknowledged that "I acknowledge that you [Auto Haus] make no express warranties regarding the vehicle as to its condition, merchantability or fitness for use, that you [Auto Haus] disclaim any implied warranties; and that I [Russos] am leasing it from you `as is'." This could hardly be clearer and could have been the subject of a motion for summary judgment had Auto Haus filed one.
The real issues then, when stripped down to the essentials, are as follows:
I. Did MBNA violate express warranties in violation of General Statutes, Sec. 42a-2-313?
II. If so, what are the plaintiffs' damages?
III. Should MBCC prevail on its counterclaim?
IV. Auto Haus' indemnification claim vs. MBNA.
 I
Did MBNA violate express warranties in violation of GeneralStatutes, Sec. 42a-2-313?
This inquire must start with plaintiffs' Exhibit A, the 1987 owners service and warranty policy which was assigned to the plaintiffs as part of the lease (also MBNA Exhibit 1). The pertinent sections of this booklet are:
 Your car is covered under the terms of these "Warranties" and your dealer will exchange or repair any defective parts in accordance with the terms of such warranties within the stated limits.
 DEFECTS: Mercedes-Benz of North America, Inc. (MBNA) warrants to the original and each subsequent owner of a new Mercedes-Benz passenger car that any authorized Mercedes-Benz Dealer will make any repairs or replacements necessary, to correct defects in CT Page 6496 material or workmanship.
Page 8 — Items Which are Not Covered:
 DAMAGE FROM THE ENVIRONMENT . . . paint or chrome which have been affected by airborne fallout, such as chemicals and tree sap, or by road salt, hail, windstorm or other environmental factors.
 GENERAL. Our intention is to repair under the warranty, without charge to you, anything that goes wrong with your car during the warranty period which is our fault. All we ask is that you properly maintain and care for the car and that you have warranty repairs or adjustments performed by an authorized Mercedes-Benz dealer.
 Please note the difference between `defects' and `damage' as used in the warranty. Defects are covered since we, the manufacturer or distributor, are responsible. Conversely, we have no control over damage caused by such things as collision, misuse, and lack of maintenance. Therefore, damage for whatever reason is not covered by the warranty.
 PAINT AND OTHER APPEARANCE ITEMS. Defects in paint, trim or other appearance items are normally taken care of during our new vehicle preparation or by the dealer during new vehicle inspection. We suggest that if you find any paint or appearance problems that you advise your dealer as soon as possible since deterioration due to use and exposure is not covered by the warranty.
The position of MBNA is that there was a defect caused by acid rain, but that this was caused by the elements after delivery of the car to the Russos. Mr. Berg, of Auto Haus, claimed that the defect was caused by a problem in the paint hardener used. This would establish that the paint condition was a defect for which MBNA would be responsible. Steve Sauer, backed up by Jeff Shaeffer, claimed that the condition was caused by acid rain but maintained down through the trial that this was damage caused after the Russos had the car. Mr. Sauer and Mr. Shaeffer testified, with commendable candor, that the car both after the first and second repainting was not up to Mercedes-Benz standards.
The court concludes that the condition was a defect caused before CT Page 6497 Russos got the car and that it was covered by the express warranty. The car was exposed for much longer periods of time while in MBNA's possession than in the mere one month the Russos had it before they told Auto Haus the paint was chipping. It is entirely understandable that the Russos didn't notice the defect at the time they got the car. They were probably quite excited about getting their new luxury car and could hardly be expected to examine each panel of it to see if the paint was proper. This is particularly so concerning the rear trunk panel.
The court concludes that the first time Mr. Russo noticed the defective paint was when he washed the car. Mrs. Russo drove the car mostly in the early months. It was kept in a garage. The claim that the acid rain condition was caused after Russos had the car is based on little more than speculation and is rejected by the court.
 II
What are the plaintiffs' damages?
The nub of the case is Russos' damages. The Russos went through a period of twenty-one months of extreme aggravation while MBNA vainly made two attempts to repair the paint job. They were paying the $524.31 monthly charge until they secured the restraining order in June, 1989. The court would emphasize that the appearance of the car was no minor matter. A person driving a $50,000 car has a right to expect that the paint isn't blotchy and chipped. Auto Haus, through Peter Themel, offered to substitute a new Mercedes-Benz but the Russos would have had to pay an extra $25,000. Mr. Sauer offered a fairer deal with a new car upon payment of $5,800 but this wasn't what the Russos were entitled to under the warranty.
Mr. Sauer offered to take the car to Baltimore and give it finally the perfect paint job which it deserved. But the Russos were fed up and declined. The court concludes that this refusal was reasonable after what they had been through.
The "fly in the ointment" is this court's order that the Russos could drive a $50,000 Mercedes-Benz for $200 a month. The order didn't purport to alter their obligation to MBCC under the lease. And, obviously, the court could not have contemplated that its effect would be felt for five years. By the time of this order, the Russos, counting the amount paid in the signing of the lease and the twenty-one payments of $524.31, had already paid in $24,775.95. CT Page 6498
We must look to the Russos' reaction to this chain of events. They drove for seven years a less than perfectly painted Mercedes-Benz. During the time since June 1989, when the $200 a month order entered, the Russos were driving the car for payments less than the economic value of the lease. They were in effect seduced by the low rent into a very long use of the car. Mr. Russo was so exasperated by his less than perfect dream-car that he left it in his garage for one year. In evaluating the Russos' travail, the court must keep in mind the public image created by MBNA over the years: "If you got a Mercedes-Benz, you've got it made." Mr. Russo was able, by dint of hard work in the framing business, to achieve the symbol of success — a Mercedes-Benz. And it was flawed, both to the Russos' eyes and to MBNA's. The Russos did not offer to return the car during the five year lease but did so at the start of the extra two years but this offer was not accepted.
The court can almost feel the aggravation suffered by the Russos. On the other hand, it cannot have been too bad since he was still driving the car seven years later. Realistically, while the suit was pending, he had no other practical choice.
The Russos' claim for breach of warranty is explicitly covered by General Statutes, Sec. 42-179 et seq. Connecticut's Lemon Law, Sec. 42-179 (a) provides:
Section 42-179. New motor vehicle warranties
 (a) As used in this section and section 42-180: (1) `Consumer' means the purchaser, other than for purposes of resale, of a motor vehicle, any person to whom such motor vehicle is transferred during the duration of an express warranty applicable to such motor vehicle, and any other person entitled by the terms of such warranty to enforce the obligations of the warranty; and (2) `motor vehicle' means a passenger motor vehicle or a passenger and commercial motor vehicle, as defined in section 14-1, which is sold in this state.
This section exactly covers the Russos' status as assignees of the MBNA warranty.
Section 42-179 (d) provides:
 (d) If the manufacturer, or its agents or authorized dealers are unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any defect or condition which substantially impairs the use, safety or value of the motor vehicle to CT Page 6499 the consumer after a reasonable number of attempts, the manufacturer shall replace the motor vehicle with a new motor vehicle acceptable to the consumer, or accept return of the vehicle from the consumer and refund to the consumer the following: (1) The full contract price including, but not limited to charges for undercoating, dealer preparation and transportation and installed options, (2) all collateral charges, including, but not limited to, sales tax, license and registration fees, and similar government charges, (3) all finance charges incurred by the consumer after he first reports the nonconformity to the manufacturer, agent or dealer and during any subsequent period when the vehicle is out of service by reason of repair, and (4) all incidental damages as defined in section 42a-2-715, less a reasonable allowance for the consumer's use of the vehicle. . . . A reasonable allowance for use shall be that amount obtained by multiplying the total contract price of the vehicle by a fraction having as its denominator one hundred thousand and having as its numerator the number of miles that the vehicle traveled prior to the manufacturer's acceptance of its return. It shall be an affirmative defense to any claim under this section (1) that an alleged nonconformity does not substantially impair such use, safety or value or (2) that a nonconformity is the result of abuse, neglect or unauthorized modifications or alterations of a motor vehicle by a consumer.
In accordance with section (d), the court concludes that MBNA was unable to conform the motor vehicle to its express warranty by correcting the paint defect, which substantially reduced the value of the motor vehicle to the consumer after a reasonable number of attempts.
The court accepts the plaintiffs' calculation of damages as follows:
Capitalized Cost Reduction $12,175.00
First Year License and Registration 153.00
Sales and Use Tax 913.13
First Base Month Lease Payment 487.73
 Periodic Payments October 30, 1987 through March 30, 1994 21,964.04 ---------
Total Payments by Plaintiffs $35,692.90 CT Page 6500
Computation of Reasonable Allowance:
 63,400 (Total Miles) $35,692.90 $22,629.30 ------ ---------- 100,000 X 1 $13,063.60
Total Due Plaintiff: $13,063.60
Judgment will enter for the plaintiffs against Mercedes-Benz North America in the amount of $13,063.60, plus statutory interest since January 1, 1989, shortly after the second failed attempt to remedy the paint problem. Under General Statutes, Sec. 42-180 (as approved June 17, 1987; lease dated September 30, 1987), the court awards the plaintiffs $8,500 on account of attorney's fees, plus costs.
 III
Should MBCC prevail on its counterclaim?
The court finds that MBCC should recover on its counterclaim. The court does not find the plaintiffs' arguments against this conclusion persuasive or, even in some aspects, relevant to the issues involved. The issue remaining is MBCC's damages.
MBCC has claimed damages in the amount of $44,863.98, plus attorney's fees of $16,892.71. The plaintiffs are ordered to return the car to MBCC immediately. This will give them for the end of term residual value $25,696, leaving $19,167.98 as MBCC's claim. MBCC would charge the plaintiffs for eighty (80) payments of $524.31, that is for twenty (20) months beyond the five year term. The lease does not provide for such payments to continue beyond the termination date. MBCC has not proven that the $200 a month payment after this date was uneconomic or unfair for a five year old car, under all of the circumstances of this case. The court computes MBCC's damages as follows:
1. The difference between the $524.31 payment and the court ordered $200 per month payment; $334 times the 36 months which ran after the $200 order equals. . . $12,024.00
 2. Unpaid personal property taxes . . . 1,104.18 --------
DAMAGES $13,128.18
Plus 10 percent interest (General Statutes, Sec. 37a-3) CT Page 6501
MBCC's claim for attorney's fees is unreasonable. The court awards MBCC $5,000 in attorney's fees.
 IV
Auto Haus' indemnification claim vs. MBNA
Defendant Auto Haus raised two issues in its claim for indemnification and attorney's fees against MBNA: (1) whether MBNA owed a duty pursuant to contract to indemnify Auto Haus for any finding by the court against Auto Haus in favor of the plaintiffs. Since this court found for Auto Haus, this issue is now academic; (2) whether or not Auto Haus is entitled pursuant to contract to attorney's fees from MBNA for defense costs in this action.
By the plain and simple terms of the car dealer agreement between Auto Haus (Auto Haus' Exhibit 6) and MBNA, the latter is obligated to reimburse Auto Haus for reasonable attorney's fees resulting from complaints seeking damages against Auto Haus which claim property damage caused by an alleged defect in the design, manufacture or assembly of a Mercedes-Benz product. Auto Haus proved adequate notice to MBNA under this contract. None of the exceptions to MBNA's liability for attorney's fees and costs was claimed or proven by MBNA.
Accordingly, the court awards $3,500 attorney's fees to Auto Haus against MBNA, plus costs.
T. Clark Hull State Trial Referee